UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-25296-CV-WILLIAMS

LUCIANO ZANELLO[1] CASTILLO,

    Petitioner,

v.

FIELD OFFICE DIRECTOR OF ENFORCEMENT
AND REMOVAL OPERATIONS, MIAMI,
FIELD OFFICE, IMMIGRATION AND
CUSTOMS ENFORCEMENT, *et al.*,

    Respondents.
_____/

## ORDER

**THIS MATTER** is before the Court on Petitioner Luciano Zanella Castillo's ("***Petitioner***" or "***Mr. Castillo***") Motion to Enforce Habeas Order and For Immediate Release (DE 9) ("***Motion***"). Respondents filed a Response (DE 11) ("***Response***"), and Petitioner filed a Reply (DE 12). For the reasons discussed below, Mr. Castillo's Motion (DE 9) is **GRANTED IN PART.**

### I.    FACTUAL BACKGROUND

The Court borrows its factual account leading up to the Motion from its November 21, 2025 order. (DE 6). Mr. Castillo is a Venezuelan citizen who has resided in the United States since December 2020. (DE 1 ¶¶ 15, 42). On October 2, 2025, Mr. Castillo was arrested while travelling in his work van, after the van was stopped for allegedly lacking a license plate on the trailer in tow. (*Id.* ¶ 43; DE 4-1 at 2). He was not alleged to have committed any criminal offense, and he was not cited for any traffic or municipal code

---

[1] The correct spelling of Mr. Castillo's middle name is Zanella.

violation. (DE 1 ¶ 42). At the time of his arrest, Mr. Castillo held a valid driver's license and a valid work permit. (*Id.* ¶¶ 43–44 (citing DE 1-2; DE 1-3)). Despite this, Mr. Castillo was taken into custody by the United States Department of Homeland Security's ("**DHS**") Immigration and Customs Enforcement ("**ICE**"). (*Id.* ¶ 44; DE 4-2 ¶ 10). Mr. Castillo was initially transferred to Florida Soft-Sided Facility South, before being transferred to the Miami Federal Detention Center ("**FDC**") at 33 NE 4th Street Miami, FL 33132, where he remains in custody. (DE 1-5 at 9; DE 4-4 (detention history)). On October 17, 2025, over two weeks after being taken into custody, ICE served Mr. Castillo with a Notice to Appear ("**NTA**"), charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I) and commenced removal proceedings under 8 U.S.C. § 1229a. (DE 1 ¶ 44; DE 4 at 2; DE 4-2 ¶¶ 11–12; DE 4-5).

On October 24, 2025, Mr. Castillo appeared before an EOIR immigration judge ("IJ") for a bond hearing. (DE 1 ¶ 46; DE 4-2 ¶ 13; DE 4-8). The IJ denied bond without conducting a dangerousness or risk of flight determination, concluding that Mr. Castillo's detention was mandatory, and therefore the IJ lacked jurisdiction over his detention status. (DE 1 ¶¶ 47–48; DE 4-2 ¶ 13; DE 4-8).

On November 13, 2025, Mr. Castillo filed a three-count Petition, arguing that the IJ's decision to treat Mr. Castillo as subject to § 1225(b)(2)'s mandatory detention scheme "violates the plain language of the Immigration and Nationality Act [("**INA**")]," the bond regulations promulgated pursuant to the INA and the Due Process Clause. (DE 1 ¶¶ 5, 53–56). Respondents countered, among other jurisdictional and administrative exhaustion arguments, that "Petitioner is currently detained under 8 U.S.C. § 1225(b)(2)(A) and is therefore ineligible for release[.]" (DE 4 at 1). On November 21, 2025,

the Court granted the Petition in part, ordering Respondents to "afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) on or before November 24, 2025, or otherwise release Petitioner by that time." (DE 6 at 13) ("**Habeas Order**"). With regard to Respondents' administrative exhaustion argument, the Court "excused for futility" Petitioner's failure to appeal the IJ's denial to the Bureau of Immigration Appeals ("**BIA**") because "any 'bond appeal to the BIA is a nearly forgone conclusion under'" *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). (DE 6 at 7 (quoting *Puga v. Assistant Field Off. Dir., Krome North Serv. Processing Ctr.*, 25-cv-24535, 2025 WL 2938369, at *2 (S.D. Fla. Oct. 15, 2025))).

On November 24, 2025, Mr. Castillo came before an IJ for a bond hearing ("**Bond Hearing**"). (DE 11-1; DE 11-2). The IJ denied bond, noting, "[d]anger, flight risk, and denied as a matter of discretion," and stating that "Respondent has failed to meet his burden to demonstrate he is neither a danger or flight risk." (DE 9-3 at 1). Mr. Castillo reserved his right to appeal. (*Id.* at 2).

Leading up to the Bond Hearing, Petitioner filed a packet of evidence supporting Mr. Castillo's fitness for bond. Among other things, this included proof that Mr. Castillo has a valid Florida driver license and Employment Authorization, that he had a pending Asylum and Withholding of Removal application including approval to remain in the United States as of August 9, 2023,[2] and that he filed United States federal income taxes in 2024.

---

[2] Mr. Castillo's counsel suggested at the Bond Hearing that the asylum application may have been untimely, though this was not confirmed. (DE 11-1 at 6). The IJ considered this fact in his denial determination, noting that the lack of a timely asylum application "leaves him with withholding of removal and protection under the Convention. So, relief is very limited." (*Id.* 8). The IJ did not expand upon how this inference impacted his dangerousness or risk of flight determination. In his Reply, Petitioner interprets the IJ as having concluded Petitioner is a flight risk, in part, because he did not file an asylum

(DE 1-5 at 17–19, 22–31). It also included a letter from Mr. Castillo's landlord, confirming Mr. Castillo had lived at the landlord's rental property for the last twelve months and had been punctual in paying rent. (*Id.* at 20). The packet further included a letter in support of Mr. Castillo from his sister-in-law Nancy Romero, a United States citizen, stating that Mr. Castillo has been a person of integrity, honesty, and strong family values during the two years she has known him, and is not a danger to anyone. (*Id.* at 33). Ms. Romero also offered to provide him with housing and support during the resolution of his immigration case. (*Id.* at 34). Further, Christian Paez, Mr. Castillo's employer at Wyrenet Technologies Inc., an underground telecommunications installation company, wrote a lengthy letter vouching for Mr. Castillo's professionalism, integrity, work ethic, leadership, cooperation, honesty, kindness, and strong moral values. (*Id.* at 41). The packet also included proof of various technical certifications in industrial operations and administration Mr. Castillo earned in Venezuela and since arriving in the United States. (*Id.* at 49–53). Finally, Mr. Castillo submitted proof of local church membership here in the United States. (*Id.* at 46).

The day before the Bond Hearing, the government filed an unredacted I-213 form and several overview reports and articles containing generic information about Tren de Aragua. (DE 11-2 at 3–18). The I-213 form included the following note, with no author identified: "Zanella Castillo claims no gang affiliation. Has gang markings that are affiliated with Tren De Agua. HSI interviewed and determined he is an affiliation with a gang." (*Id.*

---

petition within one year. (DE 12 at 6). Petitioner takes issue with the IJ's conclusion on this point, but neither raised this concern in his Motion to Enforce or at the Motion Hearing. The Court does not have sufficient information to analyze this issue from the unsupported, two-sentence argument in Petitioner's Reply. However, Petitioner will have an opportunity to discuss it fully with the IJ at Petitioner's upcoming bond hearing.

at 7). Petitioner's counsel did not receive notice of the Bond Hearing time or these filings until moments before the hearing began. (DE 9 at 5; DE 12 at 4–5).

At the Bond Hearing, the IJ acknowledged that, due to the last-minute scheduling of the Bond Hearing required by the Court's Habeas Order, the IJ "ha[d] not had a chance to review anything that's been filed" and he was not "able to prepare properly." (DE 11-1 at 4). Nonetheless, in an effort to meet the Court's deadline,[3] the IJ commenced the Bond Hearing.

DHS counsel argued to the IJ that they were "opposed to bond, based on danger." (*Id.* at 5). Counsel asserted that "HSI has determined that respondent is a gang member of the Tren de Aragua. He has tattoos affiliated with TDA." (*Id.*) Additionally, DHS counsel stated "that HSI did have consent to search [Petitioner's] phone, and did find child sex abuse material [("**CSAM**")]—at least one image—on his phone." (*Id.*). The government did not introduce any description or photos of any tattoos, or any other evidence of gang affiliation, but relied solely upon the non-specific, double-hearsay statement in the I-213 form. Moreover, the government introduced no evidence of any kind supporting its assertion regarding CSAM.

The IJ next confirmed with Mr. Castillo that he had been in the United States for five years, since 2020, and then turned to his counsel. Petitioner's counsel pointed the IJ towards the materials submitted in support of his bond request and disputed the reliability of the government's I-213 form. (*Id.* at 7–8). He further argued that he had received no

---

[3] As noted during the hearing, the Court understood the dilemma of the IJ: a significantly increased caseload being handled by a diminished IJ community. Consequently, if additional time is needed in this or any case, this Court will consider any such request and attempt to accommodate the demands of all parties.

evidence of the CSAM from the government, that Mr. Castillo was not involved in any criminal activity when arrested, and is not a flight risk. (*Id.* at 8).

The IJ then announced his findings:

[H]e's not eligible for asylum, as it appears he has -- or, at least, that's what I'm told is the case -- he has not filed for asylum within one year of his arrival, which leaves him with withholding of removal and protection under the Convention. So, relief is very limited. He hasn't been in this country that long. By his accounts, he's been here five years. The Department has presented compelling evidence that he belongs to Tren de Aragua. I'm not going to release him as a matter of danger because, obviously, I'm not about to release someone who is a gang member or a suspected gang member, at this point. And also, he did – I've been told by the Department that he did have sexually explicit photographs involving a minor. . . .

So, he may be eventually charged with that, which I'll -- pornography of some type, or lewd and lascivious – I'm not sure what the charge would be. In any event, I am not going to give him a – I'm going to find he's a danger. I'm going to find that he did not meet his burden to demonstrate that he's not a danger or a risk of flight. I'm also denying it as a matter of judicial discretion, of which, I do have the authority to deny it on that basis.

(*Id.* at 8–9). Finally, the IJ asked if "[a]nything else needs to be put on record," and when Petitioner's counsel offered to show the IJ Petitioner's tattoos, the IJ responded, "[n]o, I don't need to see that." (*Id.* at 9).

After the Bond Hearing, Mr. Castillo filed the pending Motion to Enforce. (DE 9). In the Motion, Mr. Castillo argues principally that the Bond Hearing violated Mr. Castillo's due process rights and the Court's Habeas Order because he received insufficient notice of the hearing and the government's filings to adequately prepare and because the IJ improperly considered the unsupported allegations of gang-affiliation and CSAM possession. (DE 9; DE 12). Respondents argue that the Motion asks the Court to "review the substance of the bond hearing," which is not a district court's role. (DE 11 at 2, 8 (citing 8 U.S.C. § 1226(e)). Additionally, Respondents suggest that federal regulations allowing

the IJ to base his bond determination on "any information that is available to him," properly include the vague, unsupported allegations made by DHS counsel or an unnamed immigration official. (*Id.* at 6 (citing 8 C.F.R. § 1003.19(d)).[4]

The Court held a Motion Hearing on December 11, 2025. (DE 14). Following arguments, the Court entered a brief order finding that Mr. Castillo's Bond Hearing did not comply with its Habeas Order and requiring, among other things, that the government afford him one that comports with due process. (DE 15). This order supplements the reasoning the Court gave during the Motion Hearing and in its prior order.

## II.   LEGAL STANDARD

"Courts have the inherent power to enforce compliance with their lawful orders." *Stephens v. Ripa*, No. 1:22-cv-20110, 2022 WL 18108494, at *4 (S.D. Fla. Nov. 14, 2022) (alteration accepted) (quoting *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (analyzing petitioner's motion to enforce a court's habeas order

---

[4] It should be noted that section 1226 is silent regarding who bears the burden of proof and the extent of that burden at bond hearings, and courts are split on both issues. *Compare Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) ("[W]e hold that, in order to continue detaining [an individual] under section 1226(a), due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk."), *and Alvarez Ortiz v. Freden*, --F. Supp. 3d.--, 2025 WL 3085032, at *12–13 (W.D.N.Y. Nov. 4, 2025) (finding "that constitutional due process requires the government to bear the burden of proving by clear and convincing evidence that the individual is either a danger to the community or a flight risk even at an initial bond hearing under section 1226(a)" and, "[i]n doing so . . . join[ing] the numerous district courts in the Second Circuit that have reached that conclusion") (internal quotations omitted and alterations accepted), *and J.G.*, 501 F. Supp. 3d at 1340–41 (same), *with Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) ("The alien's burden of proof is only to show, by a preponderance of the evidence, that he or she is not a danger to the community or a flight risk. Those procedures, for individuals already in the country unlawfully, do not violate the Constitution's Due Process Clause."). Here, the IJ placed the burden on Petitioner to make both showings, though did not specify the level of the burden. (DE 11-1 at 8–9).

requiring an IJ to conduct a bond hearing, based on the claim that the hearing was constitutionally deficient); *see also S.E.C. v. Hermil, Inc.*, 838 F.2d 1151, 1153 (11th Cir. 1988) ("A district court has the power to issue an order requiring the parties to carry out the terms of an earlier order" and "[t]he usual method for having the court interpret its judgment is to file a motion to enforce the judgment.") (citations omitted).

"A motion to enforce a judgment previously entered by the court is proper and may be made any time after the entry of judgment." *Advanced Diabetes Treatment Ctrs., LLC v. Sebelius*, No. 09-cv-61698, 2012 WL 13071337, at *5 (S.D. Fla. Dec. 11, 2012) (first citing *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608, 615 (3d Cir. 1990); then citing Fed. R. Civ. P. 70; and then citing *Gilbert v. Johnson*, 490 F.2d 827, 829 (5th Cir. 1974)); *see also Sales v. Johnson*, No. 16-cv-01745, 2017 WL 6855827, at *7 (S.D. Cal. Sep. 20, 2017) (granting motion to enforce judgment based on IJ's failure to conduct bond hearing in compliance with court's habeas order).

### III. DISCUSSION

#### A. *Jurisdiction*

Respondents argue that 8 U.S.C. § 1226(e) strips the Court of jurisdiction to review the substance of IJ's discretionary bond decision. That provision states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). That provision "precludes an alien from 'challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.'" *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018)

(alteration accepted) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). However, it "does not preclude challenges to the statutory framework" regarding the IJ's bond determination. *Id.* (holding challenges to several aspects of the statutory scheme governing immigration detention—including regarding who bears the burden of proof at bond hearings—were not precluded by § 1226(e)); *see also Nielsen v. Preap*, 586 U.S. 392 (2019) (concluding § 1226(e) is inapplicable to a claim that noncitizens taken into immigration custody well after their release from criminal custody may not be held without a bond hearing under § 1226(c) because the dispute "is not that the Government exercised its statutory authority in an unreasonable fashion . . . [but] the extent of statutory authority that the Government claims"). In other words, § 1226(e) only bars challenges to "a mere 'discretionary' 'application' of the relevant statute[.]" *Nielson*, 586 U.S. at 401.

Courts have repeatedly concluded that § 1226(e) does not preclude challenges to the procedures used in custody determinations under § 1226. *See, e.g., Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78–79 (3d Cir. 2019) (reviewing whether a custody determination comported with the requirements that the IJ engage in "factfinding based on a record produced before the decisionmaker and disclosed to him or her;" and that the petitioner "be allowed to make arguments on his or her own behalf" and have "an individualized determination of his or her interests"); *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1340–42 (M.D. Ga. 2020) (reversing IJ's no-bond determination under § 1226(a) and requiring new bond hearing, after concluding the IJ's allocation of the burden of proof to the petitioner violated due process); *Sopo v. U.S. Att. Gen.*, 825 F.3d 1199, 1220 (11th Cir. 2026) (reversing denial of habeas petition and requiring government to provide petitioner an individualized bond hearing under § 1226,

in which the petitioner has the burden of proof, and the IJ follows federal bond regulations and relevant BIA precedent), *vacated on other grounds by* 890 F.3d 952 (11th Cir. 2018)[5].

As in the above cases challenging the procedural adequacy of immigration bond hearings, Mr. Castillo's Motion is not "an attack on the outcome" of his hearing, but on the "process itself." *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1001–02 (N.D. Cal. 2018) (internal quotation omitted). As the Court discusses below, it is not reviewing the IJ's weighing of evidence, determinations of credibility, or any other discretionary judgment. Nor is the Court dictating whether the IJ chooses to allow or deny bond. The Court decides only whether the IJ made his determination based on the legally correct evidentiary standards. Section 1226(e) does not bar this inquiry. *See id.* at 1001–02 (challenge to "IJ's finding that [petitioner] is a danger to the community based solely on a single untested charge that was not supported by any evidence in the record" not precluded by § 1226(e)); *Garcia v. Hyde*, No. 25-cv-585, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025) (section 1226(e) does not strip jurisdiction to determine whether IJ's reliance on foreign arrest warrant in making her flight risk determination violated due process); *Kharis v. Sessions*, No. 18-cv-04800, 2018 WL 5809432, at *5 (N.D. Cal. Nov.

---

[5] "Although vacated opinions are void and do not constitute binding precedent, they constitute persuasive authorities." *D.A.F. v. Warden, Stewart Det. Ctr.*, No. 4:20-CV-79-CDL, 2020 WL 9460467, at *9–10 (M.D. Ga. May 8, 2020) (acknowledging *Sopo*'s value as a "persuasive authorit[y]" despite its vacatur, and following the *Sopo* court's rejection of a "bright-line approach for section 1226(c) detainees"); *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) ("We are free to give statements in a vacated opinion persuasive value if we think they deserve it.") (citation omitted); *Gutter v. E.I. DuPont de Nemours and Co.*, No. 95-cv-2152, 2001 WL 36086589, at *6 (S.D. Fla. Mar. 27, 2001) ("Despite the fact that [a] vacated decision itself may be a nullity in terms of preclusive effect . . ., and may not be relied on for precedent . . ., a logical and well-reasoned decision, despite vacatur, is always persuasive authority[.]") (citations omitted).

6, 2013) (finding court had jurisdiction to "decide whether IJ 'relied upon proof that—as a matter of law—could not establish [the] conclusion'" that petitioner was a danger to the community or flight risk) (quoting *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008)). Therefore, the Court continues to the merits of Petitioner's Motion.

### B. *The Bond Hearing did not comply with the Court's Habeas Order.*

"[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). And Government detention of noncitizens "violates that Clause unless the detention is ordered in . . . certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690 (cleaned up). In the case of bond hearings pending removal proceedings, the justifications for detention are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Id.*

The procedures attendant to individualized bond hearings under § 1226 are meant to ensure the government's interests in detaining a noncitizen are present with respect to that individual. So, "[a]lthough the Federal Rules of Evidence do not apply in immigration proceedings, due process considerations limit the evidence that may be considered." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1299 (11th Cir. 2015) (citation omitted), *overruled on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). The BIA and circuit courts have established basic evidentiary standards which must guide an IJ's

discretionary determination.[6] For example, the IJ may consider only "probative and specific evidence." *Matter of R-A-V-P-*, 27 I. & N. Dec. 803 (BIA 2020) (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 41 (BIA 2006) ("Any evidence in the record that is probative and specific can be considered.")). And the "probative value of and corresponding weight, if any, assigned to evidence of criminality will vary according to the facts and circumstances of each case and the nature and strength of the evidence presented." *Matter of Thomas*, 21 I. & N. Dec. 20 (BIA 1995) (citing *Sierra-Reyes v. INS*, 585 F.2d 762, 764 n.3 (5th Cir. 1978) (holding that police reports implicating respondent in criminal activity but which never resulted in prosecution due to lack of sufficient evidence were not probative)).

  Finally, the IJ may look to a number of factors in determining whether and what bond to set, including: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. *Matter of Guerra*, 24 I. & N. Dec. at 40 (*Guerra* factors); *see also Sopo*, 825 F.3d at 1220 (citing

---

[6] Immigration judges are "bound both by agency precedent . . . and by precedent established by the federal appellate courts." *Stevens v. Osuna*, 877 F.3d 1293, 1303 (11th Cir. 2017); *Thamotar v. U.S. Att'y Gen.*, 1 F.4th 958, 971 (11th Cir. 2021) (explaining that published BIA decisions "are binding on immigration judges and cabin the scope of their discretion[.]") (alteration accepted) (citing 8 C.F.R. § 1003.1(g)(1)–(2)).

the *Guerra* factors as among "the standards to guide" IJ's in conducting bond hearings). So "long as the decision is reasonable," an IJ "has broad discretion in deciding the factors that he or she may consider" and what weight to give each. *Matter of Guerra*, 24 I. & N. Dec. at 40. When the Court ordered Respondents to "afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a)," it required Respondents to afford him a hearing consistent with these and all other binding procedural safeguards. (DE 6 at 13).

The IJ who presided over Mr. Castillo's Bond Hearing deviated from these requirements. First, he considered DHS counsel's allegation that Mr. Castillo possessed CSAM on his phone without any supporting evidence, let alone probative and specific evidence. DHS counsel simply asserted to the IJ that "HSI . . . did find [CSAM]—at least one image—on this phone." (DE 11-1 at 5). Respondents confirmed at the Motion Hearing that the government did not introduce the photo, the testimony of the agent who conducted the alleged search, or even a report containing that agent's hearsay statements and a description of the phone's contents. If the government had submitted any probative and specific evidence of CSAM, the IJ was entitled to give that as much weight as he chooses, but he was not entitled to draw a factual conclusion that Mr. Castillo possessed CSAM without any competent evidence.

Additionally, the IJ considered as "compelling evidence" that Mr. Castillo "belongs to Tren de Aragua" a note on his I-213 form, which states "Zanella Castillo claims no gang affiliation. Has gang markings that are affiliated with Tren De Agua. HSI interviewed and determined he is an affiliation with a gang." (DE 11-2 at 7). This vague, unsworn hearsay statement from an unknown source was not accompanied by any description or photo of the tattoos identifying Mr. Castillo as a gang member, and the government presented no

other evidence or allegation of suggesting gang-affiliation. For instance, no evidence was presented that Mr. Castillo has any criminal history, much less any gang-related criminal history. Courts across the country have found more specific and reliable evidence of criminal activity than this to fail the "probative and specific" standard. *See Garcia,* 2025 WL 3466312, at *8–9 (IJ violated due process when it considered a Guatemalan arrest warrant on charges of "Suppression of Marital Status" and "Ideological Falsehood" as evidence of criminal activity and dangerousness because the IJ admittedly did know what either of those charges meant); *Ortega-Rangel*, 313 F. Supp. 3d at 1004 (petitioner's arrest record for narcotics possession within intent to distribute and law enforcement declaration supporting the arrest together were "insufficient evidence to support" a finding of dangerousness based on her trafficking history, given that no judge or jury had found probable cause for the charge and the declaration merely supported the fact that petitioner was aware that her boyfriend sold drugs). Here, Respondents did not show that Petitioner had any contact with the criminal system at all. Their evidence consisted of an unsworn statement from an unnamed source, alleging with no specificity that Mr. Castillo has "markings" suggestive of Tren de Aragua membership. *See Indrawati*, 779 F.3d at 1301 (discussing cases holding an IJ's primary or sole reliance on hearsay statements in removal proceedings violates due process). The IJ's reliance on this uncorroborated assertion is especially problematic in light of the materials submitted by the government suggesting their belief that tattoos as common place as Michael Jordan logos are probative evidence of Tren de Aragua membership. (DE 11-2 at 18); *see Trump v. J.G.G.*, 604 U.S. 670, 678–79 (2025) (Sotomayor, J., dissenting) (describing the innocent explanations for tattoos proffered by plaintiffs held based on suspected Tren de Aragua

affiliation, including that one "is a tattoo artist who got an eye tattoo because he saw it on Google and thought it looked cool") (cleaned up).

The IJ's failure to consider the correct evidentiary standards was compounded by his apparent failure to view or consider any of the evidence Petitioner submitted in support of his bond request and his affirmative rejection of Petitioner's proffered rebuttal evidence. A new hearing may be required "[w]here it appears as though the IJ misinterpreted or failed to consider probative evidence." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 773 (N.D. Cal. 2019) (citation omitted); *see also Obregon v. Sessions*, No. 17-cv-01463, 2017 WL 1407889, at *7–8 (N.D. Cal. Apr. 20, 2017) (finding the record "demonstrates that the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness" and requiring IJ to conduct a new bond hearing "that assesses her present dangerousness based on all the relevant evidence").

At the outset of the Bond Hearing, the IJ acknowledged that he "ha[d] not had a chance to review anything that's been filed" and he was not "able to prepare properly." (DE 11-1 at 4). This is born out by the fact that the IJ also failed to discuss the materials Mr. Castillo submitted, including from his landlord, employer, and citizen sponsor. The Court makes no comment on how much weight the IJ should have given these filings, if any. However, because they were relevant to several of the *Guerra* factors, the IJ erred by ignoring them completely. Finally, the IJ rejected Petitioner's offer to show the IJ his tattoos, which could have rebutted the government's allegation that Petitioner bore markings suggestive of gang-affiliation. (DE 11-1 at 9); *see Garcia*, 2025 WL 3455312, at *9–10 (finding constitutional error in IJ's decision to credit a foreign arrest warrant as evidence of dangerousness while disregarding evidence presented by petitioner tending

to prove the warrant was no longer active). "The Due Process Clause requirement of a full and fair hearing[] mandates that [an IJ] review all relevant evidence[.]" *Kharis*, 2018 WL 5809432, at *8 (quoting *Larita-Martinez v. I.N.S.*, 220 F3d 1092, 1095 (9th Cir. 2000)). And though the IJ's "failure to mention specific evidence, by itself, does not overcome th[e] presumption" that it did, "where the [IJ's] discussion of the record demonstrates that it has not adequately considered the full record, due process requires the [IJ] to reconsider its bond determination on a full record." *Id.* (internal quotations omitted); *see also Torres Murillo v. Barr*, No. 19-cv-05676, 2019 WL 8723753, at *3 (N.D. Cal. Oct. 23, 2019) ("An IJ's active refusal to hear relevant oral testimony may constitute a due process violation.") (citing *Oshodi v. Holder*, 729 F.3d 883, 889–90 (9th Cir. 2013)). Here, the IJ made explicit that he had not had time to review the evidence submitted by Petitioner and that he would not review the evidence of gang-markings offered by Petitioner. These issues, along with the absence of any "specific and probative" evidence to be considered, deprived Mr. Castillo of the individualized bond hearing required by the Court's Habeas Order and mandate a rehearing.[7]

---

[7] The Court need not address whether the late notice to Petitioner's counsel of the Bond Hearing and Respondents' submitted evidence violates the Habeas Order because Petitioner will have another hearing, and the Court's December 11, 2025 Order ensures that lack of notice will not be a repeated issue.

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Mr. Castillo's Motion (DE 9) is **GRANTED IN PART**.

2. Respondents shall comply with the Court's Habeas Order (DE 6) and December 11, 2025 Order (DE 15) on or before **December 29, 2025**, or otherwise release Petitioner by that time.

3. Respondents shall file a notice with the Court on or before **December 31, 2025** confirming and detailing their compliance with this Order.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 19th day of December, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE